Vs. Discount Rock & Sand. Thank you. You do as well. Thank you. Okay. Let's see, Ms. Cox. Good morning. May I please report Andrea Cox for Discount Rock & Sand. As I stand here today, the presence of Carlos Blanco, his continued presence, destroys this court's subject matter jurisdiction. The plaintiffs got it wrong three times. Yeah, this is a weird case. Yes, it is. But here's the problem I'm having. It seems to me that the district court properly dismissed Blanco, even though it cited a different rule. It entered an order. It didn't just accept stipulation of parties. It actually entered an order and dismissed Blanco effectively under 41A2. Well, Your Honor, I don't entirely agree with that because the court went on to reserve jurisdiction to enforce a settlement agreement. Isn't that indicative, though, of a 41A2? In other words, 41A2 requires dismissal on grounds that are just and proper. And here it seemed to me that the court in its order, and this is I think what leads me to the conclusion that the chief has articulated, is that, A, it was without prejudice, even though it was sought with prejudice. So that's one condition that's just and proper, at least under the court's view. And second, that it retained jurisdiction to enforce the settlement, which it's allowed to do, to reserve jurisdiction to do ancillary things under its ancillary jurisdiction. So it seems to me that that is consistent with a 41A2 order. Your Honor, the original dismissal under 41A1 made no mention whether it was with or without prejudice. And so the order just made an assumption. Well, the assumption is backed up by law, which is that where it's not articulated, it generally is with prejudice. And what the court there said is, despite that, I am doing it without prejudice. In other words, that seems indicative of the exercise of discretion, which would seem to me to fall within 41A2. Okay. But I also take issue with the court talking about an ancillary jurisdiction. In our jurisdictional brief, we cited the case, I'm going to miss the name, Coconin. Yeah, Coconin. And it expressly says that enforcement of a settlement agreement falls outside of the state. Yeah, but in that case, it didn't reserve. That was the problem. So in that case, the court didn't reserve jurisdiction. A party came in and said, Judge, we'd like you to enforce our settlement agreement. And what the court said in Coconin is there was no reservation, and so there's no basis to exercise ancillary jurisdiction. Here, the court did exactly. In other words, what the court did here was do exactly what Coconin said not to do, or what Candidate Cannon said you should do, which is reserve if you want to enforce it. And it's our position that by reserving, he's continuing to exert jurisdiction over Blanco. Because if there were a problem enforcing the settlement agreement, then they would go back to the court. But Blanco's been dismissed as a party. The problem I'm having is, look, if this had been a 41A1 dismissal, then all you have to have is a voluntary stipulation signed by the parties, and the court performs no role. Now, it's true, the district court, in a confusing order, cites that rule, right? Yes, Your Honor. But that contemplates no court order. But then the court does, at least in substance, what 41A2 calls for, which is it enters the order, dismiss it. And it seems to me that Blanco's out of it. Whether there's some issue that could arise in terms of enforcement of the settlement, it seems to me neither here nor there. In the event that there were some effort to do so, you could make an argument that there's no subject matter jurisdiction to do so, that there's just a contract, and that can be enforced in state court. But in terms of where we are, in terms of parties before the court, whether there are any claims pending anymore against Blanco, it seems to me there aren't. And therefore, the district court has diversity jurisdiction to go forward with what remains. Okay, then let me move on to my next point, which is that we are requesting a new trial based on the district court's abuse of discretion in showing a patently false and misleading demonstration to the jury. It is undisputed how this accident happened. So you're going on a prejudice argument, right? Yes, sir. So can you show me where in the record you made a prejudice objection? A prejudice objection? A contemporaneous objection, you know, like at the time that the error comes up. Where was it said, Judge, we'd like this excluded under either Rule 403 or because the prejudicial value substantially outweighs any probative effect, something that would indicate to the court that you're making the argument you're making to us right now. Well, I don't have the exact citation, but I can provide that to you afterwards. Sure, I can tell you that I've read the entire, there was two colloquies that happened in advance of this when this first came up. And the objections seem to me, and correct me if I'm wrong, were mostly about timeliness, were almost all about timeliness. You were upset that you got this like almost at midnight the night before. And that's an issue, and I think you did preserve that. But I don't know embedded in there if it's, Judge, this thing is prejudicial because of X, Y, and Z. I don't see that. Okay. Am I missing something? I think that it might be more subtle than you would have liked to have seen, but we were objecting that there were changes that had been made to the slide. Rule generally for preservation is enough to put the district court on notice of the argument that you're making. In other words, it has to know, hey, I got it, prejudice, so I can then rule on that. Is there anything there that you can point me to? I think that in the colloquy with Judge Moore, that he understood it was a prejudice argument because he was saying, I'll give this curative instruction. I think that they can be told that if it's different than what the evidence is that they're going to hear, that he thought that took care of it. So let's assume it's preserved. Then on harmlessness, so you mentioned the curative instruction. So the jury is explicitly told, this is not evidence, and it may be different than what you're hearing. So rely on what you're hearing. As I understand it, the expert, both on direct and cross-examination, explicitly admitted that the one or two cars that was between the victim's car and the car that was hit by the truck was not there. And the jury heard throughout, and it was essentially uncontested by everybody, that there were cars in between. So what prejudice was there that this expert showed, hey, this is how the accident happened, sweeping away some of the ancillary stuff? I would say that the, quote, curative instruction was more harmful than good. You object to it? Yeah, we objected that. You objected to the curative instruction? That is my recollection, Your Honor. OK. But the court said to the jury, if you see anything different, I mean, I'm not suggesting there would be anything different. And at that point, the judge at least knew that there were five cars involved in this accident. But didn't the jury know that as well? Your Honor. And the reason, again, I go back to the point that Judge Luck made, the expert witness plainly said there were two cars in between, the car that got struck and the truck that did the striking. And you had multiple witnesses who said the same thing. So was there ever any real, and if you look at the arguments that the lawyers made to the jury, there was never any dispute that there was effectively a caravan of cars. There was the plaintiff's car that was struck. There were two cars in between. There was the truck that Discount owned and that Blanco drove. There was no dispute. There were four. He wasn't trying to conceal that there were two cars in between. I'm having trouble, again, and this is the point that Judge Luck is asking you about, finding any prejudice in the, I was just looking at the pictures themselves that came in that are part of this record, the stills taken from the video. Where is the prejudice? Your Honor, at the point that this video is being shown, it was from an accident reconstructionist. So the jury is under the impression that this person has reconstructed the accident. It's a horror show, this animation. It essentially shows the Discount truck slamming into the Nissan with no obstructed view. It gives the impression that even if they had already heard about these other cars, it appears as though those cars had already gone by because they're never in it. And also, Your Honor, at the point that this animation was shown, the jury had not already heard from the driver of the Mazda or the Camry. So at that point, they have incomplete information, and they're being shown this horror show of an animation that just was patently misleading when plaintiffs knew that was not how the sequence of events happened. I see my time has expired. Thank you. Ms. Siegel. Good morning. This is the court, Nicole Siegel, on behalf of the plaintiffs or the appellees here. Unless the court has any questions on the jurisdiction issue, it seems that the court has come to the conclusion, which we've come to, which is that that order that the court entered dismissing Blanco cured the jurisdictional defect. And that's our primary. It was effectively a 41-8-2 order, right? I think that that's what the court was trying to do. And our position is, ultimately, it probably doesn't matter what the court authority was because that order hasn't been appealed. What we have is an order dismissing him, as the court noted. And, yes, we do believe that the court was probably intending that to be a 41-8-2 order, dismissing Blanco. Or there would have been no reason for him to enter an order at all. Exactly. And it's, you know, as you mentioned, it's a bit of a mess, of course, how it came about because we filed a stipulation at the court's direction. And then the court went ahead and filed the order subsequently. So it's not exactly clear what the court's thinking was there. But at the end of the day, we do have an order dismissing Blanco, which we believe cures the jurisdictional defect. So unless the court has any further questions about that issue, I'll move on to the demonstrative aid. I'd like to start off by just briefly pointing out that this was referred to multiple times in the briefs and here as a video. It was not, I think, video sort of implies that they were actual, you know, this was filming either. It was an animation. It was an animation. And so I think that that is an important factor. Counsel referred to it as a horror show. This was a seven-second clip that looks like a cartoon, essentially. It wasn't meant to be a horror show. It doesn't show any real damage. It doesn't show, you know, there's nothing horrific about this video. It was meant as explained. The district court gave a limiting instruction that it was not evidence. Yes, correct. And I do not believe that they objected to the curative instruction as being somehow more prejudicial to go to Judge Buck's question. There was an opportunity for cross-examination to point out that the animation didn't account for the earlier vehicle. Correct. And we raised that issue with Mr. Fisher on direct. And then, of course, defendants raised it on cross-examination. So it was 100% clear throughout his testimony and throughout the whole trial, as you all noted, that everybody knew what was happening here. Everybody knew there were two cars in between. This brief seven-second clip was meant purely to show the mechanics of where Sanchez's truck hit, or excuse me, Blanco's truck hit the back of the decedent's car and how it pushed it in front of Mr. Pinkerton's RV. That was the sole purpose of this. It wasn't to show the timing or the distance or anything of that nature. I think that that is all that I have, unless you all have any other questions. I have one, and it wasn't raised earlier, but I'm curious what your views are. Does the question of rebuttable presumption go to a jury? Normally, it does not. I did not find any. There's not a standard instruction on the rebuttable presumption of the rear-end presumption. It seems to almost always be dealt with either in summary judgment or directed verdict. It was not here. I always understood it to be a legal doctrine that a court would decide whether to give it or not to give it, whether there should be a rebuttable presumption. But if there was a rebuttable presumption, it depends on what the evidence actually showed in the case. But by giving this legal question to the jury, did the judge basically put his thumb on the scale in such a way that it had a powerful impact on the determination? Did it create prejudicial error here that's sufficient to require a new trial? I do not think so at all, Your Honor. First, I think it's important to point out that the court did not instruct the jury that the presumption applied. The instruction, which I think is implied or stated by the appellants in their briefing, but the instruction given said that the presumption applies unless the rear driver puts forth the evidence establishing the lead driver's negligence contributed to the accident. And so it basically gave it to the jury. The exact language was, in a rear-end collision, a rebuttable presumption of negligence attaches to the driver of the rear vehicle. The presumption can be rebutted if the rear-end driver puts forth evidence establishing the lead driver's negligence contributed to the accident. But I couldn't find any case in Florida law where such an instruction on a legal principle was actually given to the jury. I think you're right. I think in most cases it's done either at summary judgment or directed verdict. And it was done here. It was given to the jury. I don't think that the jury was told. I don't think the way that it's worded. I think that that is an accurate statement of the law. And I think it essentially left it up to the jury. Now, normally that may be something that should be decided by a court. But I don't think this, like you said, put the thumb on the issue for the jury. Wouldn't it come up to – wouldn't it be a jury issue if there was a question of fact regarding one of the factors that could rebut the presumption as a matter of law? In other words, as I understand it, it is a matter of law generally. And generally the presumption applies for rear-end collisions based on how the nature of rear-end collisions. And that presumption can be rebutted if the case is about one of four things. And if one of those four things is decided both as a matter of law at summary judgment or through directed verdict, then it overcomes that presumption and that thing is decided. And so that way it's almost never a jury question. But it would come up if there is a factual dispute about one of those four things. So let's take this case, for example. If there was the sudden stop as that term is understood in Florida law through Clampett and other cases, if there was a factual dispute that whether it was proper to take a left turn here or someone testified that, let's say, it was dotted line, that they could take a left turn at the scenic view, or others testified no, it was a striped line and there's no basis to take a left turn, that fact could go to a jury. In other words, normally there's a rebuttable presumption, but it can be overcome if there is this negligence. In this case, the negligence being whether sudden stop is appropriate. Is that fair? I think that's fair. And I think that's exactly what we believe the trial court thought here and what the instruction was meant to do to instruct the jury. If you find that there was negligence on the part of the decedents here in, you know, the court didn't obviously in its instruction get into the three methods, but we have those three sort of accepted ways that the presumption can be rebutted. And, you know, we feel very strongly that we did not have enough evidence. So if I understand this, then I just want you to help me understand Florida law. If there is evidence disputing this question, maybe there was a sudden stop to use the example used, then it would be appropriate for a trial judge in Florida to instruct on this rebuttable presumption with the caveat that it could be rebutted by blah, blah, blah. That would be appropriate for. I believe so. The reason I ask it is. No case that I could see ever raised this question. It was usually on summary judgment, like you say, or something before the issue ever got to the jury. But I take your position is. It's not unfairly prejudicial in any event because it is an absolutely accurate statement of the law. Correct. I think of both points, I think your first point being that if there is a factual issue that it can go to the jury, even though, like you said, it is generally decide before. But as Judge Luck said, in this case where you have maybe a factual dispute about whether there was an abrupt stop or whether the stop was in a reasonable place, that one would expect to stop, that that could go to the jury, even though that is not how it normally comes up, at least in the case law. And yes, I do think that in any event, this was not prejudicial in any way. This was an accurate statement of the law allowing the jury to decide our position, that there was no evidence at all to rebut the presumption because it's not only an arbitrary stop, but it has to be an arbitrary stop at a place where it would not be reasonable to expect a stop. So they never even argued that aspect of it. In other words, because the evidence is the way that you believe it is, you actually should have gotten a directed verdict. And the fact that this went to a jury on this and the jury came out for you, it's just no arm, no foul. Is that the argument you're making? Exactly. And I think it actually benefited them because it did give the jury the opportunity to say, OK, you did rebut it. So they got more than they were entitled to. That would be our position, but obviously we're the appellee here. So we know we didn't raise the issue as a as a as a claim of error. But I do believe that there was not sufficient evidence to support the presumptions that they actually got the benefit and having the jury get to decide the issue. Unless there are any other questions, I'll go ahead and rest and we'll ask that you affirm the judgment in the plaintiff's favor. Thank you. Thank you, Miss Segal. Miss Cox, you've saved five minutes. Thank you. It's important that these plaintiffs did not move the directed verdict. Not this jury heard a jury instruction and was read a jury instruction that is incorrect. The case law, the Florida Supreme Court case law says that the presumption vanishes and loses legal effect. It also talks about finish that sentence where a, b, c or d happens, right? There's evidence of a, b, c or d. I understand. But just to the point, I get it. But where's their evidence here of a, b, c or d? Your Honor, I think that the a, b, c or d, you're talking about the different times. Mechanical failure, sudden stop, negligent change in lanes. And I'm forgetting the fourth one. But go ahead. I, I think as you read those cases, it doesn't say those are the exclusive ways. Agreed. So under Burge, the court said when facts fairly and reasonably tend to show the presumption is misplaced, the question of negligence should be sent to the jury. And here we have two cars illegally going into the shoulder. Yeah, but that's not the driver. The quote you read is regarding and Clampett and Burge are clear that we're talking about driver negligence or something that happened with the driver. It may be that some third party was negligent here, although you did not on the verdict form ever tell the jury to assess negligence as to those folks and specifically said we're not blaming them. But putting that aside for the moment. The all this case law deal with driver negligence in here. All you told the jury was the driver wasn't negligent. So I'm having trouble seeing how it seems like you got the benefit of having rebutted it when you could have gotten a directed verdict. That would be recreating what actually happened because now instead of the jury being told there's just a presumption that there is a presumption of negligence, right? That's more than the jury. What I mean is you wouldn't have got a jury. You would have just got a directed verdict against you. Except that isn't how it went down. I understand, but you got the benefit of something that otherwise wouldn't be there. Hasn't that very good definition of harmless? Because once they're told that there was a presumption and they should have been told that there was an inference. And now they're being told as they're as they're deliberating this case, they're being told, you have to presume there was negligence, which is different than if Judge Moore had taken it out of their hands. Right, but he didn't take it out of their hands because the plaintiffs never asked him to do that. Let me ask the question this way and come back to it. I read what the judge said. By way of instruction. Was that not an accurate statement of Florida law? That in a rear one in a rear end collision, there is a rebuttable presumption of negligence that attaches to the driver of the rear vehicle. That's certainly correct, is it not? In so far as it goes. Not 100%, Your Honor, because that's not an accurate description when it gets to the jury, because by the time it gets to the jury, it has to be an inference that they are told. There is an you can draw an inference from this rear end collision, but they are not told that you that there is a presumption that I have to rebut. What happened is the judge let the jury decide. So it's not an accurate statement in Florida to say in a rear end collision, a rebuttable presumption attaches to the driver of the rear vehicle. It's accurate to that happened on a court deciding this on summary judgment. We would all agree that would be accurate, wouldn't it? Yes. Okay. And the second part of the sentence, the presumption can be rebutted if the rear end driver puts forth evidence. Some evidence establishing the lead driver's negligence contributed to the accident, whether it was sudden stop or any put on the wrong directional, whatever. That, too, on summary judgment would be an accurate statement of the law. I would take issue with that. It has to be the lead driver, but some evidence that makes it not fair or reasonable to apply the presumption. It's only that because the judge gave it, he shouldn't have said anything to them is your point. I understand. So my point is that if he was going to say anything, he should have said, you may draw an inference. That there was negligence. Where are you getting that from? I am getting that from Alford. It's a 50 C.A. case that once rebutted, the presumption is reduced to the status of an inference, which the jury can draw. Once rebutted. Once rebutted, right. Judge Moore should have decided, OK, this has been rebutted or it hasn't been rebutted. How can you when that's a jury issue? That's that's the question that I asked your opposing counsel where it's a jury issue. Doesn't it become a jury issue? Your Honor, I think that there is no Florida case that has ever presented itself in this way and that you would be creating essentially Florida law by saying that you can create a jury issue. We're blessed that no Florida court is bound by anything you say. Thank you. Thank you, Miss Cox. We have your case and we'll be in recess until tomorrow.